UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOEL M. ZELLMER, | CASE NO. C10-1288MJP |
| Plaintiff, | ORDER ADOPTING REPORT AND RECOMMENDATION WITH AMENDMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KEN NAKATSU, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Joel M. Zellmer's objections to Magistrate Judge James P. Donohue's report and recommendation. Having reviewed the report and recommendation (Dkt. No. 60), Plaintiff's objections (Dkt. No. 62), and the remaining record, the Court ADOPTS the report and recommendation with amendment, GRANTS Defendants' motion for summary judgment, and DISMISSES the case with prejudice.

**Background**

Plaintiff Joel M. Zellmer brings this suit under 42 U.S.C. § 1983, claiming that corrections officers violated his Eighth and Fourteenth Amendment rights by leaving him in

1  waist restraints and handcuffs for too long, and later denying prompt medical care, exacerbating

2  his carpal tunnel syndrome.

3        The incident at the core of this dispute occurred on Sept. 4, 2008, when Plaintiff was a

4  prisoner awaiting trial at the King County Correctional Facility ("KCCF") in Seattle. (Dkt. No. 7

5  at 3.) On that morning, Plaintiff attended a regularly scheduled meeting with his defense

6  attorneys from 9:00 – 11:00 a.m. (Dkt. No. 55-1 at 1.) Pursuant to KCCF policy, Plaintiff was

7  placed in waist restraints and handcuffs during the meeting. (Dkt. No. 60 at 2.)

8        While the meeting was underway, the two corrections officers who were guarding

9  Plaintiff were called away to participate in a shakedown that was happening on another floor of

10  the facility. (Dkt. No. 60 at 2.) Plaintiff's meeting with his attorneys ended at 11:15 a.m. Plaintiff

11  alleges that corrections officers did not return to remove his handcuffs and waist restraints until

12  about 1:30 p.m., more than two hours after the meeting with his attorneys had ended. (Dkt. No.

13  56-1 at 5.)  Plaintiff alleges that the restraints were "way too tight," and that corrections officers

14  knew they were too tight, but ignored his complaints. (Dkt. No. 7 at 4.)

15        Plaintiff alleges the restraints caused his hands to turn purple and blue, and caused him to

16  temporarily lose feeling in his hands. (Id.) Plaintiff alleges that he repeatedly asked for medical

17  care, but that officers laughed at him and did not allow him to see the jail nurse until the

18  following morning. (Id.) Plaintiff also alleges that corrections officers purposefully prevented

19  him from taking photographs of his hands until six days after the incident. (Dkt. No. 62 at 3.)

20        In August 2010, Plaintiff filed his complaint alleging that Defendants violated his Eighth

21  Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment

22  right to due process by leaving him in overly tight restraints for too long and ignoring his

23  requests for medical assistance. (Id. at 3.) In June 2011, Magistrate Judge Donohue converted

24

1  Defendants' motion to dismiss into a motion for summary judgment, invited supplemental

2  briefing, and denied Plaintiff's motion to amend his complaint to add additional named

3  defendants with leave to renew should this matter survive Defendants' motion for summary

4  judgment. (Dkt. No. 60 at 3.) On Oct. 12, 2011, Magistrate Judge Donohue issued his report and

5  recommendation (Dkt. No. 60), and on Nov. 2, 2011, Plaintiff filed his objections (Dkt. No. 62).

6                                              **Discussion**

7          Plaintiff's objections largely reiterate the allegations he makes in his complaint and again

8  in his opposition to Defendants' motion to dismiss. However, it is possible to group Plaintiff's

9  new assertions into three categories. First, Plaintiff objects that Magistrate Judge Donohue erred

10 by not allowing him to proceed against the correct Director of the King County Department of

11 Adult and Juvenile Detention ("DAJD"). Second, Plaintiff objects to Magistrate Judge

12 Donohue's conclusion Defendants should be granted qualified immunity. Third, Plaintiff objects

13 that the report and recommendation does not fully consider the factual record. Of these, only the

14 objection relating to the treatment of Defendant Nakatsu has merit, and this is not enough to alter

15 the outcome of the case.

16    A.  Plaintiff Should be Allowed to Substitute DAJD Director's Office

17         Plaintiff's first objection is that Magistrate Judge Donohue erred by recommending entry

18 of summary judgment in favor of Defendant Ken Nakatsu because Nakatsu did not participate in

19 the alleged conduct on Sept. 4, 2008. (Dkt. No. 62 at 11.) In the report and recommendation,

20 Magistrate Judge Donohue points out that Defendant Ken Nakatsu "served as Director of DAJD

21 for less than a month in early-2010 before moving to a different position within King County."

22 (Dkt. No. 60 at 4.) Magistrate Judge Donohue concludes, "There is no evidence that [Nakatsu]

23 was personally involved in any way in any of the conduct at issue in Mr. Zellmer's complaint,"

24

1 so "[h]e cannot be held liable in this lawsuit." (Id.)  Plaintiff does not contest the veracity of this

2 statement, but responds, "If Mr. Natatsu [sic] was not employed by the DAJD then it is the office

3 of the Director Plaintiff wishes to sue." (Dkt. No. 62 at 11.)

4 Plaintiff should be permitted to bring suit against the office he wishes to sue. Because

5 Plaintiff's allegations centers primarily on jail policies, the complaint should be construed as a

6 suit against the DAJD Director in his official capacity. Indeed, Plaintiff stated in his original

7 complaint that he wishes to sue the Director of DAJD in both his or her individual and official

8 capacities. (Dkt. No. 7 at 3 ("Each Defendant is sued 'individually' and in his [or her] 'official

9 capacity'").)  In his objections, Plaintiff specifically asks the Court to "[b]e advised that Plaintiff

10 was told that Mr. Nakatsu was the director of the Jail/Prison by the other defendants." (Dkt. No.

11 62 at 4.)

12 Federal Rule 25(d) permits the Court to order substitution of the current officeholder

13 when a case is brought against a party in his or her official capacity, but the wrong name is used.

14 Fed. R. Civ. P. 25(d). Although the text of Rule 25(d) specifically mentions situations where a

15 public officer who is a party to a suit "dies, resigns, or otherwise ceases to hold office," the rule's

16 logic applies to all situations where the real party in interest in an official capacity suit is the

17 governmental entity, not the individual officeholder. Id.; See also 6-25 Moore's Federal Practice

18 – Civil § 25.40; Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 31 (1st Cir. 1988)

19 (internal citations omitted) (when "the action is brought against a public officer in his official

20 capacity, the manipulation of names is merely a technicality that should not interfere with

21 substantial rights.").

22 Other provisions of the Federal Rules support the Court permitting Plaintiff to substitute

23 the current Director. Specifically, Rule 17(d) expressly provides that an official capacity action is

24

ORDER ADOPTING REPORT AND
RECOMMENDATION WITH AMENDMENT
AND GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 4

1  proper if simply asserted against the office, the holder of which is the proper party from whom

2  relief can be obtained. Fed. R. Civ. P. 17(d). Here, Plaintiff clearly stated in his complaint that, to

3  the extent he seeks relief from Nakatsu in his official capacity, he is really seeking relief from the

4  office of the Director of DAJD. Therefore, the Court will substitute the current DAJD Director

5  for Nakatsu.

6      In the instant case, the argument favoring substitution is strengthened because Plaintiff is

7  proceeding pro se. Where the plaintiff is pro se, courts are instructed to construe pleadings

8  liberally. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Here,

9  refusing to allow Plaintiff to substitute the current DAJD Director for Nakatsu would undermine

10  the purpose of liberally construing pro se Plaintiff's pleadings.

11      In situations such as this, when an officer is sued in both his individual and official

12  capacity, courts are instructed to substitute the correct officeholder with respect to the official

13  capacity claims, but keep the named officer with respect to the individual capacity claims. See

14  Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric., 847 F.2d 1038, 1041-42 n.3 (2d Cir.

15  1988); A.C.L.U. v. Finch, 638 F.2d 1336, 1340 (5th Cir. Unit A Mar. 1981). Because Plaintiff

16  seeks to sue Nakatsu in both his individual and official capacities, the Court substitutes the

17  current Director of DAJD for all claims against the DAJD Director in his or her official capacity.

18  Because Plaintiff also sues Nakatsu in his individual capacity, Nakatsu remains as the Defendant

19  for claims brought against him in his individual capacity.  However, these remaining claims

20  against Nakatsu are dismissed because the parties do not dispute that Nataksu was not employed

21  by DAJD at the time of Plaintiff Zellmer's alleged harms, and that Nakatsu has no other

22  connection to the matter.

23

24

1    While the Court has the authority under Federal Rule 21 to substitute the DAJD Director

2    who was serving on Sept. 4, 2008 as Defendant in Plaintiff's claim against the DADJ Director in

3    his personal capacity, the Court declines to make this substitution because it would cause unfair

4    prejudice. Fed. R. Civ. P. 21. The time to amend pleadings as a matter of course under Federal

5    Rule 15(a) has expired, and adding an additional defendant at this point in the litigation would

6    deny due process. Fed. R. Civ. P. 15(a).

7    In any event, substitution will not save Plaintiff's case. This is because the DAJD

8    Director is shielded by the same qualified immunity that bars suit against the other officers.

9    While the Court amends the report and recommendation to permit substitution, it grants

10    summary judgment to the Defendants and dismisses the case with prejudice.

11    B.  Qualified Immunity Analysis

12    Plaintiff's second objection is that Magistrate Judge Donohue erred in his conclusion that

13    Defendants are shielded by qualified immunity. Plaintiff argues that qualified immunity should

14    not apply because Defendants' violations of his constitutional rights were willful. Specifically,

15    Plaintiff asserts that "Defendants knew of the harm they were inflicting onto Plaintiff and

16    purposefully caused the injuries . . . ." (Dkt. No. 62 at 14.) Plaintiff alleges Defendants' actions

17    were "all a plan to hurt me." (Id.)  However, Plaintiff does not support these allegations with

18    evidence sufficient to make them more than mere conclusory statements.

19    The record shows there is no genuine dispute of material fact that could lead the Court to

20    find that qualified immunity does not apply to all Defendants. The parties do not dispute that

21    Plaintiff was restrained in accordance with DAJD policy, that Plaintiff remained in restraints for

22    no more than five hours total, or that the delay in removing his restraints was necessitated by

23    emergency situations in the facility. (Dkt. No. 60 at 5.) The parties also do not dispute that

24

ORDER ADOPTING REPORT AND
RECOMMENDATION WITH AMENDMENT
AND GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 6

1    Plaintiff was seen by a nurse the morning after the incident, that the nurse did not observe any

2    acute injuries, that no follow-up examinations revealed acute distress related to the incident, and

3    that a reviewing physician found no reason to question the sufficiency and timeliness of the

4    medical care offered. (Id.) In fact, an internal investigation concluded that Plaintiff should have

5    been, for the safety of the facility's personnel, restrained for a longer period of time than he

6    actually was. (Dkt. No. 62-2 at 6.)

7         These undisputed facts undermine the Plaintiffs allegation that Defendants knew they

8    were violating Plaintiff's constitutional rights. The principles of qualified immunity shield an

9    officer from personal liability when an officer reasonably believes his or her conduct complied

10   with the law. Pearson v. Callahan, 555 U.S. 233, 244 (2009). The qualified immunity analysis

11   has two parts: whether the facts alleged or shown make out a violation of a constitutional right

12   and whether the right at issue was "clearly established" at the time of a defendant's alleged

13   misconduct. See Saucier v. Katz, 533 U.S. 194, 201 (2001). Here, no reasonable officer would

14   have understood that placing Plaintiff in waist restraints and handcuffs in compliance with

15   facility policy would constitute the violation of a constitutional right, because it would not have.

16   And while Plaintiff's claims that he was denied medical treatment may constitute a violation of a

17   constitutional right, the evidence shows that Plaintiff was not in fact denied medical treatment.

18   (Dkt. No. 60 at 5.) Therefore, Defendants are shielded by qualified immunity.

19      C.   Analysis of the Evidence

20        Plaintiff also objects to the sufficiency of Magistrate Judge Donohue's analysis of the

21   evidence in the record. Plaintiff directly asks the Court to examine all of Plaintiff's evidence "as

22   the Magistrate Judge does not appear to have done so, because he has not even mentioned it in

23   his Report and Recommendation." (Dkt. No. 62 at 6.) Plaintiff does not state specifically what

24

1    evidence he feels is being ignored by Magistrate Judge Donohue. However, a careful reading of

2    Plaintiff's objections reveals a few instances where Plaintiff appears to be attacking the quality

3    of the magistrate judge's analysis of the evidence.

4        Plaintiff's first challenge is that the report and recommendation mischaracterizes his visit

5    with Nurse Carla Swanson on Sept. 5, 2008. (Dkt. No. 62 at 4.) Plaintiff objects specifically to

6    page 3, line 4 of the report and recommendation, stating "Nurse Swanson was actually called

7    specifically to examine Plaintiff due to the injuries Plaintiff sustained due to the violent acts of

8    defendants and their misuse of their restraints." (Id.) However, it is unclear what Plaintiff is

9    objecting to, because page 3, line 4 does not discuss how Nurse Swanson came to see Plaintiff.

10   (Dkt. No. 60 at 3.) Rather, it discusses how Nurse Swanson "noticed a small mark of unknown

11   origin" on Plaintiff's hand. (Id.)

12       A review of Nurse Swanson's declaration shows that she visited Plaintiff's cell between

13   8:30 and 9:00 a.m. on Sept. 5, 2008, and examined Plaintiff's hands through the pass-through of

14   his cell door. (Dkt. No. 46 at 1.) Rather than linking Plaintiff's injury to the "violent acts of

15   defendants," as Plaintiff claims it does, Nurse Swanson's report states that she "did not see any

16   signs of swelling, bruising or lacerations on his wrists" and that her "observation did not indicate

17   any acute distress." (Id. at 2.) Nurse Swanson referred Plaintiff to be seen by a medical provider

18   to treat his pre-existing carpal tunnel syndrome, and referred his request for extra strength

19   Tylenol. (Id. at 2.) Plaintiff's objection regarding Nurse Swanson's visit is not supported by the

20   record, and does not undermine Magistrate Judge Donohue's finding that Defendants are entitled

21   to qualified immunity.

22       Next, Plaintiff argues that the Report and Recommendation mistakenly states that

23   Plaintiff alleges the restraints were too tight for only two hours and forty-five minutes, rather

24

ORDER ADOPTING REPORT AND
RECOMMENDATION WITH AMENDMENT
AND GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 8

1  than four hours and thirty minutes. (Dkt. No. 62 at 8.) However, the report and recommendation

2  explicitly states, "No reasonable officer would have understood that Mr. Zellmer's constitutional

3  rights would be violated by leaving Mr. Zellmer in restrains for no more than *five* hours . . . ."

4  (Dkt. No. 60 at 6 (emphasis added).) Although Plaintiff is correct that the report and

5  recommendation does not explicitly address Plaintiff's description of the tightness of the

6  restraints, this issue is addressed through Magistrate Judge Donohue's discussion of Plaintiff's

7  medical treatment, including the examination by Nurse Swanson, which found no signs of

8  swelling, bruising, or lacerations. (Dkt. No. 60 at 3.)

9        D.  Summary Judgment Standard

10         Because this matter comes before the Court on Defendants' motion for summary

11  judgment (Dkt. No. 38), the Court must view all evidence in the light most favorable to the

12  nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty

13  Lobby, Inc., 477 U.S. 242, 248-50 (1986). Summary judgment is appropriate if "the movant

14  shows that there is no genuine dispute as to any material fact and the movant is entitled to

15  judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party bears the burden of

16  showing that there is no evidence which supports an element essential to the nonmovant's claim.

17  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

18         Simply put, the record does not contain evidence sufficient for the Court to find there is a

19  genuine issue of material fact regarding qualified immunity. Even when the facts are viewed in

20  the light most favorable to the Plaintiff, no reasonable corrections officer could have understood

21  that the leaving Plaintiff restrained for a few hours while handling emergency situations

22  elsewhere in the facility constituted excessive force in violation of due process or a violation of

23  the Eighth Amendment's protection against cruel and unusual punishment. The Defendants have

24

1  satisfied their burden of showing that there is no evidence which supports an element essential to

2  Plaintiff's claim. Therefore, the Court GRANTS Defendants' motion for summary judgment.

3  **Conclusion**

4  Plaintiff is permitted to substitute the current Director of DAJD for the Defendant Ken

5  Nakatsu. However, even after this substitution, all Defendants are afforded qualified immunity.

6  The Court ADOPTS the report and recommendation with amendment, GRANTS Defendants'

7  motion for summary judgment, and DISMISSES the case with prejudice.

8  The clerk is ordered to provide copies of this order to all counsel.

9  Dated December 13, 2011.

10

11

12

13  _____
    Marsha J. Pechman
14  United States District Judge

15

16

17

18

19

20

21

22

23

24
    ORDER ADOPTING REPORT AND
    RECOMMENDATION WITH AMENDMENT
    AND GRANTING DEFENDANTS' MOTION FOR
    SUMMARY JUDGMENT- 10